IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILBERT R. HOLMES | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:21-cv-00934-G-BT |
| | § | |
| MOTOR HOME SPECIALIST, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are Defendant RV Retailer of Texas, LLC d/b/a Motor Home Specialist's (MHS) Corrected Motion for Summary Judgment (ECF No. 11) and MHS's Motion to Declare Plaintiff a Vexatious Litigant (ECF No. 12).[1] For the following reasons, the Court should grant—in part—MHS's summary judgment motion and dismiss all of *pro se* Plaintiff Wilbert R. Holmes's claims and MHS's counterclaims for fraud and conversion. The Court should deny the summary judgment motion with respect to MHS's counterclaims for breach of contract and violation of the Texas Theft Liability Act (TTLA). The Court should also grant MHS's request to declare Holmes a vexatious litigant and bar him from filing in

---

[1] MHS's Corrected Motion for Summary Judgment supersedes and replaces its earlier-filed summary judgment motion. *See* Mot. 1, n.1 (ECF No. 11) (explaining that the original motion "had incorrect citations in its Table of Contents and Table of Authorities" and MHS filed the corrected motion solely "to provide the proper citations" and MHS "did not make any substantive change[s]"). Accordingly, the Court directs the Clerk to terminate as moot MHS's Motion for Summary Judgment (ECF No. 10).

1

the Northern District of Texas any civil action against MHS related to the events giving rise to this litigation.

## Background

On October 2, 2019, Holmes, a citizen of Nevada, responded to MHS's advertisement for the sale of a 1998 Tiffin Motorhome Allegro Bus 3 (the "bus") and paid MHS a $1,000 deposit. Def.'s Corr. Mot. Summ. J. Ex. A-5 (ECF No. 11-1). One week later, Holmes entered into a sales agreement with MHS for the bus. *Id*. at Ex. A-2. Holmes paid $1,449.00 towards the purchase price using a credit card and provided MHS a cashier's check for $16,088.77 to cover the remaining balance. *Id*. at Ex. A-6. In addition to signing the sales agreement, Holmes signed a Dealer's Disclosure and Buyer's Guide providing that MHS sold him the bus "as is" and "with no warranty, expressed or implied." *Id*. at Ex. A-3, A-4. Holmes then took possession of the bus in Texas.

On October 10, the day after Holmes purchased the bus, Holmes filed an affidavit, with his bank, swearing the cashier's check the bank issued to MHS was lost or stolen. *Id*. at Ex. B. On October 15, Holmes emailed MHS requesting it send him the title to the bus as soon as possible. *Id*. at Ex. A-7. Relying on its receipt of the cashier's check and unaware of the affidavit to Holmes's bank, MHS sent Holmes the certificate of title via overnight mail that same day. *Id*. at Ex. A-8. When Holmes's bank informed MHS that it issued a "stop payment" on the cashier's check, *id*. at Ex. A-8, MHS reported the bus stolen. *Id*. at p. 4 § D (ECF No. 11).

A flurry of legal proceedings ensued. On November 17, 2020, a Texas state judge issued a warrant for Holmes's arrest for violating section 31.03(e)(4)(A) of the Texas Penal Code (theft). *Id.* at Ex. C (ECF No. 11-1). And on March 29, 2021, a grand jury indicted Holmes for theft of the bus. *Id.* at Ex. E. Holmes also filed at least two civil lawsuits against MHS in Nevada, asserting claims under state and federal lemon laws and for intentional infliction of emotion distress (IIED) based on his allegation that MHS sold him a "dangerous and unroadworthy" motorhome.

Shortly before the grand jury returned the indictment, Holmes—proceeding *pro se*—filed this case in the 249th Judicial District Court of Johnson County, Texas. In his verified pleading, Holmes alleges MHS sold him the bus in "dangerous and un-roadworthy condition" and asserts claims against MHS for "bodily endangerment," violations of the Texas Lemon Law, and IIED. (ECF No. 1-2). MHS answered Holmes's lawsuit in Texas state court; MHS denied all of Holmes's claims and asserted counterclaims against Holmes for fraud, breach of contract, conversion, and violation of the TTLA. (ECF No. 1-3). On April 23, 2021, MHS timely removed the case to federal court on the basis of diversity jurisdiction. (ECF No. 1).

Approximately three months later, on July 20, Holmes paid the remaining balance owed to MHS. *Id.* at Ex. G, G-1.

MHS then filed the two pending motions. By its summary judgment motion, MHS seeks (i) dismissal of all of Holmes's claims, (ii) dismissal of MHS's counterclaims for fraud and conversion, (iii) summary judgment in MHS's favor

3

on its counterclaims for breach of contract and violation of the TTLA, and (iv) an award of taxable court costs, pre- and post-judgment interest, and the maximum penalty permitted under section 134.005(1) of the Texas Civil Practice and Remedies Code. By its motion to declare Holmes a vexatious litigant, MHS seeks a pre-filing injunction that requires Holmes to obtain court permission before filing any lawsuit against MHS or its employees in any federal district court in the state of Texas. Holmes did not file a response to either motion.

## Legal Standards and Analysis

I.   *MHS's Summary Judgment Motion*

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citation omitted). The movant can satisfy its burden by demonstrating that there is an absence of evidence to support the nonmoving party's case, which the nonmovant bears the burden of proving at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to claims or defenses upon which the movant bears the burden of proof at trial, the movant "must establish 'beyond peradventure all of the essential elements of the claim.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (quoting *Fontenot v. Upjohn Co.*, 78 F.2d 1190, 1194 (5th Cir. 1986)). This means the movant must demonstrate there are no genuine and material

disputes and that it is entitled to summary judgment as a matter of law. *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).

Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992) (citation omitted). The parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (citing *Int'l Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir. 1991); Fed. R. Civ. P. 56(e)). All evidence must be viewed in the light most favorable to the party opposing the summary-judgment motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993) (citing *Reid v. State Farm Mut. Auto. Ins.*, 784 F.2d 577, 578 (5th Cir. 1986)).

The party opposing the summary-judgment motion must identify specific evidence in the record and state the precise manner in which that evidence supports the party's claim. *Esquivel v. McCarthy*, 2016 WL 6093327, at *2 (N.D. Tex. Oct. 18, 2016) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1988)). "Rule 56 does not impose a duty on the court to 'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Id.* (citing *Ragas*, 136 F.3d at 458; *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).

A. <u>MHS is entitled to summary judgment on all of Holmes's claims because he abandoned his claims by failing to respond to MHS's summary judgment motion</u>.

It is well established in this Circuit that when a plaintiff fails to defend a claim in response to a motion to dismiss or motion for summary judgment, the claim is deemed abandoned. *Mason v. AT&T Pension Benefit Plan*, 2021 WL 965923, at *4 (N.D. Tex. Feb. 18, 2021) (Rutherford, M.J.), *rec, adopted*, 2021 WL 963756 (N.D. Tex. Mar. 15, 2021) (Fish, J.); *see also Scales v. Slater*, 181 F.3d 703, 708 n. 5 (5th Cir. 1999) (reasoning that the plaintiff abandoned her claim by failing to contest defendant's arguments for dismissal of that claim). Here, Holmes failed to respond to MHS's summary judgment motion. He did not dispute MHS's arguments; nor did he tender any competent evidence to show that summary judgment is not proper or identify specific evidence in the record and state the precise manner in which that evidence supports his claims. Accordingly, the Court should grant summary judgment in MHS's favor on all of Holmes's claims because he has abandoned his claims. *Gray v. Wal-Mart Stores Tex., LLC*, 2020 WL 7327994, at *4 (N.D. Tex. Nov. 6, 2020) (Rutherford, J.), *rec. adopted*, 2020 WL 7322737 (N.D. Tex. Dec. 11, 2020) ("Because Plaintiff has offered no evidence raising a material fact issue as to any element of her . . . claim—indeed, she has not responded or offered any evidence [at] all—the Court finds that Plaintiff has abandoned her claim . . . ."); *Arias v. Wells Fargo Bank, N.A.*, 2019 WL 2770160, at *2 (N.D. Tex. Jul. 2, 2019) (determining that the plaintiff abandoned his claim by failing to respond to the defendant's motion for summary judgment).

6

> B. <u>Alternatively, MHS is entitled to summary judgment on Holmes's claim for "bodily endangerment" because it is not a legally recognized cause of action under Texas Law</u>.

Bodily endangerment is not a cognizable civil claim under Texas law. *See Emesowum v. Zeldes*, 2016 WL 3579232, at *8 (W.D. Tex. June 27, 2016) ("As to [plaintiff's] claim for 'Texas common law . . . reckless endangerment,' no such claim exists."), *aff'd*, 697 F. App'x 386 (5th Cir. 2017). Therefore, the Court should grant MHS's summary judgment motion as to Holmes's bodily endangerment claim. *Sw. Materials Handling Co. v. Nissan Motor Co.*, 2000 WL 1664160, at *6 (N.D. Tex. Nov. 3, 2000) (holding Defendants entitled to summary judgment for Plaintiff's "not legally cognizable" claim).

Even if the Court liberally construed Holmes's *pro se* pleading as asserting a claim for negligence or gross negligence, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*pro se* pleadings are "to be liberally construed," and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers"), MHS would still be entitled to summary judgment. Holmes failed to identify competent summary judgment evidence that he suffered any bodily injury as a result of MHS's conduct. Under Texas law, "'[a] person who is placed in peril by the negligence of another, but who escapes without injury, may not recover damages simply because he has been placed in a perilous position.'" *City of Tyler v. Likes*, 962 S.W.2d 489, 500 (Tex. 1997) (citing *Gulf, C. & S. F. Ry. v. Trott*, 86 Tex. 412, 420 (1894); Restatement (Second) of Torts § 436A (1965)).

The Court should grant summary judgment in MHS's favor on Holmes's "bodily endangerment" claim.

    C. <u>MHS is entitled to summary judgment on Holmes's claim under the Texas Lemon Law because the statute is not applicable to the facts of this case</u>.

The so-called Texas Lemon Law is codified within Subchapter M of Chapter 2301 of the Texas Occupations Code. *Keystone RV Co. v. Texas Dep't of Motor Vehicles*, 507 S.W.3d 829, 833 (Tex. Ex.—Austin 2016, no pet.). Subchapter M of Chapter 2301 applies only to "an applicable manufacturer's, converter's, or distributor's *express warranty*." Tex. Occ. Code § 2301.603 (emphasis added). In this case, Holmes did not allege MHS made any express warranty in his complaint. And the uncontradicted summary judgment evidence establishes that Holmes signed two documents providing that MHS sold him the bus in "as is" condition and without any express or implied warranties. Def.'s Corr. Mot. Summ. J. Ex. A-3, A-4.

Further, the Texas Occupations Code mandates that Lemon Law provisions are "not available to the owner of the vehicle unless the owner has exhausted the administrative remedies provided by this subchapter." *Id.* § 2301.607(a). And, "the Texas legislature has clearly expressed its intention that the Texas Motor Vehicle Commission (the 'Board') exercise exclusive original jurisdiction over Texas Lemon Law claims." *Stannard v. Nat'l Indoor RV Ctrs, LLC*, 2018 WL 3608560, at *3 (E.D. Tex. July 27, 2018); *Irwin v. Country Coach Inc.*, 2006 WL 278267, at *3 (E.D. Tex. Feb. 3, 2006). Holmes has not identified any evidence that he

properly exhausted his administrative remedies prior to filing suit in state court. Therefore, the Court should grant summary judgment in MHS's favor on Holmes's Lemon Law claim.

> D. <u>MHS is entitled to summary judgment on Holmes's IIED claim because Holmes failed to meet his evidentiary burden.</u>

To recover damages for IIED, a plaintiff must establish: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004); *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998). With respect to the second element, "[e]xtreme and outrageous conduct is defined as conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993). And with respect to the last element, "mere worry, anxiety, vexation, embarrassment, or anger are not sufficient to make out an IIED claim." *Hawkins v. Frank Gillman Pontiac*, 102 F. App'x 394, 399–400 (5th Cir. 2004).

In his verified pleading, Holmes only makes conclusory assertions in support of his IIED claim. He states: "I have suffered physical harm, insult, humiliation, embarrassment, mental anguish and distress by being sold a dangerous un-roadworthy motor home." (ECF No. 1-2). This statement is merely

9

conclusory and does not establish that MHS's conduct was extreme and outrageous or that any emotional distress resulting from MHS's conduct was severe.

Holmes also attached several exhibits to his original pleading, including medical records, doctor's notes, and a note from a psychologist. To the extent Holmes intended to use these exhibits to support his claims, they are unauthenticated hearsay and not competent summary judgment evidence. *See Nucor Corp. v. Requenez*, 578 F. Supp. 3d 873, 904 (S.D. Tex. 2022) (citing cases) ("When considering whether to grant summary judgment, the Court cannot consider evidence that would be inadmissible at trial, such as affidavits or declarations founded on hearsay or outside the personal knowledge of the declarant or irrelevant evidence or unauthenticated documents."). But even if the Court were to consider the exhibits, they would not be sufficient to raise a genuine fact issue for trial. All of the medical records and physician notes are dated at least six months prior to the transaction involving the bus. Consequently, Holmes's exhibits fail to raise a genuine fact issue as to whether any alleged emotional distress he suffered is attributable to MHS's conduct. The Court should grant summary judgment in MHS's favor on Holmes's IIED claim.

> E. <u>The Court should deny MHS summary judgment on its breach of contract and TTLA counterclaims because MHS failed to establish "beyond peradventure" it suffered damages as a result of Holmes's conduct.</u>

MHS bears the burden of proof on all its counterclaims. Therefore, as the summary judgment movant on its counterclaims for breach of contract and violations of the TTLA, MHS must establish "beyond peradventure" all of the

essential elements of those counterclaims. *See Fontenot*, 78 F.2d at 1194. Stated differently, with respect to its counterclaims, MHS must demonstrate there are no genuine and material disputes and that it is entitled to summary judgment as a matter of law. *Martin*, 353 F.3d at 412.

MHS's counterclaims for breach of contract and violations of the TTLA require proof of damages. *See Kellermann v. Avaya, Inc.*, 530 F. App'x 384, 388 (5th Cir. 2013) (setting forth the elements of a breach of contract claim as: "(1) the existence of a valid contract between plaintiff and defendant; (2) the plaintiff's performance or tender of performance; (3) the defendant's breach of the contract; and (4) *the plaintiff's damage as a result of the breach*") (emphasis added); *Domain Prot., LLC v. Sea Wasp, LLC*, 426 F. Supp. 3d 355, 382-83 (E.D. Tex. 2019) (observing that, to establish a TTLA claim, the plaintiff must show: "(1) the plaintiff had a possessory right to property or was the provider of services; (2) the defendant unlawfully appropriated property or unlawfully obtained services in violation of certain sections of the Penal Code; and (3) *the plaintiff sustained damages as a result of the theft*") (emphasis added). But MHS barely addresses the damages element of its claims in its summary judgment motion.

MHS merely states that it suffered damages because Holmes refused to pay the amount he owed to MHS until July of 2021—two years after the initial transaction. Def.'s Corr. Mot. Summ. J. 14-15. The only evidence related to damages is Giff Akins's Supplemental Declaration, in which Akins confirms that Holmes paid "the amount that [he] owed to MHS" and "MHS deposited that check

11

into MHS's bank account." *Id.* Ex. G. This evidence is not sufficient to show, beyond peradventure, that MHS sustained damages as a result of any breach of contract or theft. To the contrary, the evidence raises a fact issue to whether Holmes payment and MHS's acceptance of the amount owed created an accord and satisfaction. *See Richardson v. Allstate Tex. Lloyd's,* 235 S.W.3d 863, 865 (Tex. App.—Dallas 2007, no pet.) ("An accord and satisfaction exist when parties agree to discharge an existing obligation in a manner other than in accordance with the terms of their original contract. The defense involves a new contract, either express or implied, in which the existing obligation is released by agreement of the parties through means of a lesser payment tendered and accepted.") (cleaned up). Therefore, the Court should deny MHS's motion for summary judgment as to both its breach of contract and TTLA counterclaims.

> F. <u>The Court should dismiss MHS's counterclaims for fraud and conversion without prejudice pursuant to Fed. R. Civ. P. 41.</u>

Finally, MHS seeks to voluntarily dismiss its counterclaims for fraud and conversion. Def. Corr. Mot. Summ. J. p. 23. Under Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, a defendant may voluntarily dismiss a counterclaim before a responsive pleading is served or, if there is no responsive pleading, before evidence is introduced at a hearing or trial. Fed. R. Civ. P. 41(a). Here, Holmes has not answered or otherwise responded to MHS's counterclaims, and there has been no evidentiary hearing or trial. Therefore, MHS is entitled to voluntarily dismissal of its counterclaims for fraud and conversion.

12

II.     *MHS's Motion to Declare Holmes a Vexatious Litigant*

The Court possesses the inherent power to protect the efficient and orderly administration of justice and to command respect for the court's orders, judgments, procedures, and authority. *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993). Included in this inherent power is the power to levy sanctions in response to abusive litigation practices. *Id.* Sanctions may be appropriate when a *pro se* litigant—like Holmes here—has a history of submitting multiple frivolous claims. *See* Fed. R. Civ. P. 11; *Mendoza v. Lynaugh*, 989 F.2d 191, 195-97 (5th Cir. 1993). *Pro se* litigants have "no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986). A court can impose on a vexatious litigant a pre-filing sanction, but it must weigh the following factors:

> (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 189 (5th Cir. 2008).

A. <u>On record before it, Court should find that Holmes has a history of submitting multiple frivolous claims and that sanctions are appropriate to deter him from further vexatious litigation</u>.

MHS has submitted evidence to show that Holmes has filed more than 70 lawsuits in Nevada courts over the past decade, including 41 lawsuits in Las Vegas Justice Court, 28 lawsuits in Clark County District Court, and 3 in the United States

13

District Court for the District of Nevada. Mot. 6-8; App. 7-78. Indeed, Holmes's litigiousness earned him a sanction from a Nevada court. On May 19, 2020, the Eighth Judicial District Court of Nevada declared Holmes to be a vexatious litigant and enjoined him "from filing claims in the Eighth Judicial District Court that are not legally cognizable, and from filing meritless claims for negligent or intentional infliction of emotional distress [IIED]." App. 83-97. The Nevada Court of Appeals upheld the vexatious litigant finding and affirmed the pre-filing injunction. *Holmes v. Holmes*, 479 P.3d 1012, 2021 WL 463639, at *2 (Nev. App. Feb. 8, 2021).

Shortly before the Nevada court declared Holmes a vexatious litigant, he filed his first lawsuit against MHS in Clark County District Court asserting claims that are substantially identical to his claims in this lawsuit. App. 134-35. MHS removed the Nevada state court case to federal court, Cause No. 2:21-cv-00547-NJK (D. Nev.), and filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(2) and (12)(b)(6). Holmes did not file a response. Instead, Holmes filed a second lawsuit against MHS in Clark County Justice Court asserting the same claims he raises here. App. 100. The court dismissed the second lawsuit and, when Holmes appealed, the Nevada court of appeals dismissed the appeal. Then, Holmes filed this lawsuit in Texas state court. MHS removed the state court case to federal court and filed its summary judgment motion.

It is clear from the record that Holmes is a vexatious litigant. Although this lawsuit appears to be the first one he filed in a Texas court, Holmes has filed numerous actions in various Nevada state and federal courts, including lawsuits

14

against MHS related to the bus and the events giving rise to this litigation. The orders disposing of those actions—including these findings and conclusions and the recommendation to grant MHS's summary judgment motion on Holmes's claims—reveal that Holmes lacked a good faith basis for initiating the lawsuits. And in many instances, Holmes abandoned his claims or failed to pursue the litigation beyond the initial stages. The burden on the courts and other parties resulting from Holmes's frivolous filings is significant, as those courts and other parties had to expend resources to dispose of Holmes's claims.

Furthermore, Holmes's lawsuits against MHS are harassing and certainly "clog the judicial machinery" with meritless claims. A harsh sanction is appropriate in this case because Holmes is likely to ignore any lesser alternative sanction. Indeed, Holmes ignored the spirit of the warning in the Eighth Judicial District Court of Nevada's sanction when he filed his second and third lawsuit against MHS. Accordingly, the Court should bar Holmes from filing in the Northern District of Texas any civil action against MHS related to the events giving rise to this litigation.

## **RECOMMENDATION**

The Court should GRANT MHS's summary judgment motion ([ECF No. 11](#)) in part and DISMISS all of Holmes's claims and MHS's counterclaims for fraud and conversion. The Court should DENY summary judgment on MHS's counterclaims for breach of contract and violation of the TTLA. The Court should also GRANT MHS's motion to declare Holmes a vexatious litigant ([ECF No. 12)](#)

15

and bar him from filing in the Northern District of Texas any civil action against MHS related to the events giving rise to this litigation.

**SO RECOMMENDED.**

August 30, 2022.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996).